### KIRKPATRICK v. POPE MANUF'G CO.

(Circuit Court, D. Connecticut. November 23, 1894.)

### No. 398.

PATENTS—ROYALTIES—CONSTRUCTION OF CONTRACT.

K. assigned to P. certain patents for velocipede saddles, and P. agreed to manufacture, and place on the market, saddles containing the improvements, or some of them, described and claimed in the patents, and to use reasonable facilities to promote the sale of saddles of that class; to keep accounts of all of such saddles sold; to make return thereof on the first of each year; to pay to K., within 20 days after such return, 25 cents on each saddle sold by P. during the preceding year; and to pay to K. half the net receipts from licensees and infringers. After the royalties had been paid for two years, a narrow construction was put on the patents in a suit by P. against a third person for infringement. Thereupon, P.'s attorney suggested that returns should be made annually as before, but that payment should be deferred till determination of the case by the supreme court, when, if the patents were sustained broadly, settlement for infringements could be had at the same time. K. assented to this, and for several years, till the decision had been affirmed,

returns were made, including, without distinction, all saddles made by P., all of which were covered by the broad construction of the patents, though only part of them were covered by the narrow construction. All the saddles had been marked and advertised as covered by the K. patents. *Held*, that K. was entitled to the royalty on all the saddles, the contract having been made with the understanding that the patents covered them, and no modification of the contract having been made.

Action by Thomas J. Kirkpatrick against the Pope Manufacturing Company for royalty on patents. Judgment for plaintiff.

Kerr & Curtis (Paul A. Staley and Smith & Barker, of counsel), for plaintiff.

William A. Redding, for defendant.

TOWNSEND, District Judge. This is an action at law, tried to the court under a stipulation waiving a jury, to recover the amounts shown by certain royalty returns made by defendant. The defendant alleges that the returns are erroneous in part, and denies its liability as to such part. Upon the evidence introduced in this case, I find the following facts:

The plaintiff was a manufacturer of saddles for bicycles, and had obtained several patents for improvements therein. The defendant had for many years been extensively engaged in the manufacture of bicycles. On September 7, 1885, the parties executed the following agreement:

### "Agreement.

"Whereas, Thomas J. Kirkpatrick, of Springfield, Ohio, has this day assigned to the Pope Manufacturing Company, a corporation of Hartford, Connecticut, four several letters patent of the United States, viz. No. 216,-231, dated June 3rd, 1879; No. 278,560, dated May 29th, 1883; No. 289,272, dated 27th November, 1883; and No. 314,142, dated March 17th, 1885, for improvements in velocipede saddles, as well as all rights to recover for past infringements thereof. Whereas, both of said parties hereto are desirous of making said patents of value and profit to themselves, respectively: Now, in consideration of one dollar by the said Kirkpatrick to the said corporation paid, receipt whereof is hereby acknowledged, and of the stipulations herein, it is agreed by and between the parties hereto as follows, to wit: (1) The Pope Manufacturing Company agrees to manufacture and place upon the market, with reasonable promptness, velocipede saddles containing the improvements, or some of them, described and claimed in said letters patent, and to use its reasonable facilities and effort to extend the market for and promote the sale of saddles of that class; and, further, to use its reasonable efforts to prevent the manufacture, use, or sale of the inventions, or either of them, claimed in said letters patent, by other parties in the United States, except by purchase or license of the said corporation; and, further, to keep true and correct accounts, open to the reasonable inspection of the said Kirkpatrick, or his attorneys or representatives, of all saddles made and sold by said corporation, or under its license, containing said inventions, or either of them, and to make full and correct returns in writing to said Kirkpatrick, verified by oath if required by him, on or within twenty days of the first day of January in each year, during the term or terms of the said letters patent, beginning with the first day of January, 1886, said returns to be for sales of the preceding calendar year; and, further, to pay to said Kirkpatrick on or within twenty days of the first day of January in each year during the term or terms of said letters patent, beginning with the first day of January, 1886, the sum of twenty-five cents upon and for each and every saddle sold by said corporation or by its licensees or by infringers, from whom it has received or recovered payment of royalty or damages, during the preceding calendar year. (2) The said Kirk-

patrick agrees to transfer such orders, custom, correspondence, and other aid as may be valuable to the Pope Manufacturing Company in the prosecution of said business of making and selling such saddles, and such drawings, models, or suggestions as he has for the improvement thereof, and to disclose and apply for patents upon, as he may be requested, any modifications or improvements in said saddles which he may have made or begun to develop to this date, and to assign any patents that may be granted therefor to the said corporation, and generally to make any applications or sign or execute any papers for and at the expense of said corporation, which it may be advised are necessary or expedient to make said patents and improvements fully available to said corporation.

"Witness our hands and seals this seventh day of September, A. D. 1885.

"Thos. J. Kirkpatrick.        [Seal.]

"The Pope Mfg. Co.,

"Albert A. Pope, Prest.    [Seal.]"

On September 14, 1885, the parties executed a supplementary agreement, which is as follows:

"Memorandum.

"That whereas, an agreement was entered into between the parties hereto, dated the 7th day of September, 1885, relating to four several letters patent, and saddles to be made thereunder: Now, for sufficient consideration, it is agreed as follows: That the Pope Manufacturing Company may exercise its discretion as to the rates of royalty to be charged to its licensees under said patents, and as to suits against infringers, and is to keep account of its receipts from licensees and infringers, and of all reasonable expenses involved in the collection of royalties and damages, and to render statements of said accounts to said Kirkpatrick, and that in accounting with the said Kirkpatrick the said corporation shall deduct the amount of said expenses and the collections from said receipts, and shall pay over to the said Kirkpatrick one-half of the difference or net receipts so found, in place of the sum of twenty-five cents upon and for each and every saddle upon which it has received payment as stipulated at the end of the first section of said agreement. This agreement is to be taken as a part of said former agreement of said 7th of September, which is hereby confirmed in every respect, except as expressly herein modified.

"Witness our hands and seals this 14th day of September, A. D. 1885.

"Thos. J. Kirkpatrick.

"The Pope M'f'g Co.,

"E. W. Pope, Sec'y."

Upon the execution of this agreement the plaintiff discontinued the manufacture of said saddles, and he afterwards made suggestions concerning the improvement thereof, as provided for in said agreement. Returns of sales of saddles were annually made by the defendant to the plaintiff from 1886 until 1891, and payments were made therefor for the years 1886 and 1887 in accordance with said agreement. No other payments have been made, and this suit is brought to recover the sums stated in said subsequent returns, which have not been paid. The defendant had been chiefly engaged in the manufacture of a bicycle having a large forward wheel and a small rear wheel, prior to June, 1888. About that time it commenced to sell the low-wheeled, rear-driving "safety bicycle," and used thereon a saddle differing in construction from those used on the older type of wheel. The saddles sold by the defendant during the years 1888, 1889, 1890, and 1891 were different from any saddles sold by either plaintiff or defendant at or prior to the time of making said contract, and from any saddles sold by defendant for more than

two years after said contract was made. The returns for saddles sold for 1888, 1889, 1890, and 1891 were rendered under the following circumstances: In April, 1887, the defendant brought suit in the United States circuit court for the Northern district of Illinois against the Gormully & Jeffery Company for alleged infringement of two of the patents covered by said agreement. The court, in its opinion, gave such a limited construction to such patents as relieved the defendant therein from the charge of infringement, and dismissed the bill. The broad construction of the claims of said patents therein contended for, by the defendant herein, covered hammock seats and flexible seats suspended, front and rear, upon independent springs. The narrow construction adopted by said circuit court limited said claims to saddles constructed with bifurcated springs at the forward ends. Shortly after this decision the plaintiff met Mr. Pratt, the attorney for the defendant company. Mr. Pratt expressed regret at the decision, and a firm conviction that upon appeal to the United States supreme court said patents would be broadly sustained. Thereupon, the plaintiff remarked that, while he was sorry at the result, he did not understand that it affected his right to receive the royalty. Mr. Pratt said that was a matter to which he had not given special attention, but suggested that, during the interim from that time on until the hearing should be had in the supreme court, the returns should be made as before, and payment should be deferred until the termination of the litigation, when, if the patents were sustained broadly, there would be a handsome return from infringers, which could be settled at the same time. The plaintiff assented to this arrangement. Early in 1889, the returns not having been forwarded, Paul A. Staley, the attorney for the plaintiff, wrote the following letter to said Pratt, the attorney for defendant:

"Springfield, O., February 12, 1889.

"Charles E. Pratt, Esq., Care Pope Mfg. Co., 79 Franklin Street, Boston, Mass.—Dear Sir: Referring again to the matter of the Gormully & Jeffery suit, and the Kirkpatrick saddle patent, Mr. Kirkpatrick desires me to say that your suggestion of Mr. Wetmore to act in connection with the other counsel in the case at the hearing in the supreme court meets with his approbation. I suppose that there is no probability or possibility of the case being heard for two or three years yet. I would suggest, however, if you think best, that you notify Mr. Wetmore of our intention at such time as you desire, and when there is a probability of the case being heard, that myself and Mr. Kirkpatrick will be glad to meet him, and go over the case with him, after he has looked the matter up to his satisfaction. Mr. Kirkpatrick also desires me to request that the Pope Company make their usual annual statement of the number of saddles during each year until these cases are finally disposed of. This seems to be no more than right, under the terms of the agreement. Of course, no other settlement will be expected, other than the statement, until the final disposition of the case is had. The annual statements, however, will furnish a basis of such settlement in case the patent shall be sustained, and enable Mr. Kirkpatrick to keep run of the business during the pendency of the suit.

"Very truly, yours,                           Paul A. Staley."

This letter was authorized by the plaintiff, and was written after he had reported to said Staley, and had talked over with him the previous conversation with said Pratt. Mr. Wetmore argued the case on appeal. The supreme court approved the construction of

the Kirkpatrick patent adopted by the lower court, but did not pass upon the Shire patent. To the foregoing letter, Mr. Pratt replied as follows:

"14 March, 1889.

"Paul A. Staley, Esq., Springfield, Ohio—My Dear Sir: Your favor of 12th ult. came during my absence abroad. I note its contents now on returning, and have nudged our bookkeeper about sending statements of saddles sold, to Mr. Kirkpatrick. The number sold last year was, I believe, 5,112. The other matter is too remote still to admit of much answer now.

"Yours, very truly, Charles E. Pratt."

And on May 11, 1889, he wrote the following letter:

"11 May, 1889.

"Paul A. Staley, Esq., Springfield, Ohio—Dear Sir: Replying to your favor of 9th, I have to say that I gave Mr. Kirkpatrick a statement of the number of saddles, as required, by letter; and the bookkeeper now says that, knowing that, he did not understand it necessary to make a separate return himself. I have now requested him to send a statement to Mr. K., signed by himself.

"Yours, truly, Charles E. Pratt."

Except as may be inferred from these facts, there has been no modification of the original contract of September 7 and 14, 1885. Said contract was drawn by the attorney for defendant, and was signed by plaintiff without the advice of counsel. The broad construction of said patents would include all saddles accounted for in the returns made by defendants, namely, 34,652 saddles. The narrow construction would only include saddles not applied to safety bicycles, namely, 7,303 saddles. The defendant, in its agreement, promised to place upon the market "saddles containing the improvements or some of them, described and claimed in said letters patent, and to use its reasonable facilities and effort to extend the market for and promote the sale of saddles of that class," and to pay a royalty for each saddle sold by it containing the inventions, or either of them. The plaintiff claims that these words refer to the inventions actually described in said patents. The defendant claims that they refer only to those which might thereafter be adjudged to be valid. The ambiguity thus disclosed necessitates a further finding as to the situation of the parties, and the acts done by them showing their practical interpretation of said agreement. Upon this point I further find as follows: The plaintiff never demanded any royalty on any saddles sold by the defendant during the years 1888, 1889, 1890, and 1891, until July 1, 1892. The books of account kept by defendant never made any discrimination between classes of saddles adapted for the high-wheel and those adapted for the safety bicycle. All flexible saddles hung upon front and rear independent springs were treated in these accounts as coming under said agreement of September 7, 1885, and the returns for royalties were made in accordance with such accounts. From September 7, 1885, until after the last of the returns sued upon was rendered, there was never any difference made in the dealings of the defendant with the plaintiff, in its own books of account, in its catalogues or circulars, in its returns, or in any wise whatever, between said saddles, so far as their designation as Kirkpatrick saddles, and their inclusion in the re-

turns made under said contract, are concerned. Every saddle included in the returns sued upon was stamped as patented, with Mr. Kirkpatrick's name, and with the number and date of his patent,—No. 314,142, March 17, 1885. These saddles, when made for safeties as well as for high bicycles, were designated in the catalogues, circulars, and price lists of the defendant as the "Kirkpatrick Saddle," being there thus distinguished in order to secure the good will of his name. Said saddles commanded a higher price in the market than other types of saddles. The defendant never suggested to the plaintiff that it should claim any distinction, in the return for and payment of royalties, between the two kinds of saddles, until after the last of the returns in suit was made, nor until payment conformably to the returns in suit was demanded by the plaintiff. No notice of intention to refuse payment in case the scope of said patents should be limited by the courts was ever given to the plaintiff, and there was no mistake of fact made in the preparation and rendition of either of the four annual returns of saddles sold by the defendant for the years 1888 to 1891, inclusive. No returns of saddles for these four years, except those put in evidence, and showing 5,112 saddles sold and subject to royalty in 1888, 6,752 in 1889, 9,831 in 1890, and 12,957 in 1891, have ever been made by the defendant to the plaintiff.

The defendant contends that at the time of making said contract there was some doubt as to the legal interpretation and scope of said Shire and Kirkpatrick claims, and that said returns were made with the mutual understanding that it should be subsequently ascertained how many of the saddles sold would come within said claims, as they should be construed by the supreme court of the United States, and that, if said claims should not be broad enough to cover the safety saddles, they should not be paid for, but that, by a mistake as to the legal construction of said patents, all the saddles, both for high and safety bicycles, were included in said returns. The plaintiff contends that said contract was made upon the mutual understanding that said claims covered all adjustable hammock seats and flexible or treeless seats hung, front and rear, upon independent springs. He denies that said returns were made by mistake, or upon any such condition as is claimed by defendant, and claims that they constituted, in effect, when accepted, an account stated between the parties. Upon these points, I find as follows: The assignment of said patents, and the contract between the parties, were made with the understanding that the inventions and improvements claimed and described in said patents covered adjustable hammock seats and flexible seats hung, front and rear, upon independent springs. All the saddles sold by defendant during 1888, 1889, 1890, and 1891, and of which returns were made to plaintiff, contained said inventions and improvements, or some of them. It is not necessary, in this finding, to determine how far this agreement may have been understood to be dependent upon the legal construction to be thereafter put upon said patents, because the evidence as to the situation of the parties, their relations to each other, and as to the practical interpretation put by them upon said contract,

fails to show, in any event, any understanding other than that the royalties should be paid in case the patents should be sustained. It does not appear that the idea of a modification of the agreement by reason of a limited construction of said patents ever occurred to the parties until after the final decision of the suit against Gormully & Jeffery in the United States supreme court. If the defendant intended to be bound, and understood that it would be bound, only to pay royalties on such saddles as should be included under the claims of said patents, as they might be construed by the supreme court in the suit by the defendant against the Gormully & Jeffery Company, it was its duty to notify the plaintiff of such intention; and, having failed to do so, such undisclosed intention, not known or assented to by the plaintiff, lacks the essential element of a contract, and therefore no such contract, or modification of the original contract, can be held to exist between the parties.

Upon the foregoing facts, I hold, as matter of law, that the contract is to be construed as an agreement to pay royalties on all the said hammock or flexible saddles sold by defendant, and included in said returns. I therefore find that the defendant is indebted to the plaintiff in the sum of $8,663, with interest thereon from the date when payment was demanded, namely July 1, 1892, to the date of the entry of the judgment.